[No. 13690. Department One. February 28, 1917.]

AMERICAN SURETY COMPANY OF NEW YORK, *Respondent*, v.
H. O. FISHBACK, *State Insurance Commissioner*,
*Appellant*.[1]

INSURANCE—INDEMNITY INSURANCE—CORPORATIONS—REGULATION—
JUDGMENTS — PAYMENT — DAY OF EXECUTION — STATUTES — REPEAL.
Since the insurance code makes no pretense of repealing existing
laws except those "on the subject of the organization of insurance
companies and insurance business," and since repeals by implication
are not favored, Rem. Code, § 522 of the practice act providing for
a ninety-day stay of execution on judgments for over $1,500, is not
repealed by Id., § 6059-196, of the insurance code, providing that
judgments against any indemnity or insurance company upon a
bond shall be paid within thirty days, upon penalty of forfeiture of
its license to do business in this state; which must be taken to mean
that such judgments must be paid within thirty days unless execu-
tion be stayed by resort to the general law in the practice act.

EXECUTION—STAY—JUDGMENTS. The giving of a stay bond, under
Rem. Code, § 522, substituting a statutory and binding obligation to
pay the judgment in any event at the end of ninety days, is in
legal effect a payment *pro tempore*, within the meaning of Id.,
§ 6059-196, requiring judgments against an indemnity or insurance
company to be paid within thirty days, on penalty of forfeiture of
their license to do business in this state.

SAME—STAY—TIME OF COMMENCEMENT. Rem. Code, § 522, pro-
viding for a stay of execution for ninety days upon the filing of a
stay bond, without any limitation as to the time of the filing of the
bond, makes the stay operate from the time the bond is filed and
not from the date of the judgment.

INSURANCE—CORPORATIONS—LICENSE TO DO BUSINESS—REVOCATION.
In view of all the provisions of the insurance code relating to notice,
charges, and hearing before revoking the company's license to do
business, Rem. Code, § 6059-196, providing for the revocation of the
license of a company for failure to pay a judgment within thirty
days, does not impose the arbitrary duty upon the insurance commis-
sioner to revoke a license, but it is his duty to exercise a sound dis-
cretion upon the principles of law and equity, where the company
has not been guilty of any breach of faith.

Appeal from an order of the superior court for Thurston
county, Mitchell, J., entered June 27, 1916, in favor of the

[1]Reported in 163 Pac. 488.

plaintiff, in an action to enjoin the insurance commissioner from revoking the license of a surety company.   Affirmed.

*The Attorney General* and *Howard Waterman, Assistant* (*Charles E. Arney,* of counsel), for appellant.

*Hastings & Stedman,* for respondent.

CHADWICK, J.—This appeal is taken from a permanent order granted by the superior court of Thurston county, restraining the insurance commissioner from revoking the license of the respondent, American Surety Company.

On June 7, 1915, the Puget Sound Bridge & Dredging Company recovered a judgment in the superior court of King county for $7,854.74 against the Guardian Casualty & Guaranty Company, as surety on a contractor's bond. The Guardian Company appealed, filing a supersedeas bond with respondent herein as surety.   Judgment against the Guardian Company and its surety was affirmed.   After the remittitur was sent down, the Guardian Company, with another company as surety, filed a bond staying execution of the judgment for ninety days, under Rem. Code, § 522, which is as follows:

"Stay of execution shall be allowed on judgments rendered in the supreme court and superior courts as follows:

. . .

"On all sums over fifteen hundred dollars, ninety days."

This is a part of the practice act passed in 1854.   At the time the execution was stayed, there was upon the statute books (a part of the insurance code, Laws of 1911, p. 270) a provision which, by its terms, is intended to insure prompt payment of judgments rendered against indemnity and surety companies.

"Failure to Discharge Contract—Forfeiture.—If any such company shall neglect, fail, or refuse to pay any final judgment or decree, rendered against it, upon any such recognizance, bond, stipulation, or undertaking made or guaranteed by it, in this state, for the period of thirty days

after any such judgment or decree shall have been finally determined in case of an appeal, or within thirty days after the time for taking an appeal has expired when no appeal is taken from such judgment or decree, or in case an appeal be taken and the same be dismissed before final determination on appeal, then within thirty days from such dismissal, it shall forfeit all right to do business in this state and the commissioner shall thereupon revoke its license and the license of its agent. (L. '11, p. 270, § 196)." Rem. Code, § 6059-196.

The insurance commissioner notified respondent that, unless the judgment was satisfied within thirty days after the appeal was finally determined, the license of respondent would be revoked. The effect of this ruling is to deny to surety companies the privilege of staying executions under the general law.

It is the contention of the *Attorney General* that the insurance code, of which § 6059-196 is a part, is a special act intended to cover the whole subject of insurance of whatever kind and, under well recognized rules of construction, as well as by its terms, supersedes all general laws; and that a company, finding a judgment rendered against it, must meet it under the provisions of the special act or suffer a forfeiture of its right to do business within the state.

It is the contention of respondent that no part of the practice act was expressly repealed; that repeals by implication are not favored; that the insurance code is a general and not a special law, and that courts will, wherever possible, so construe statutes which are in apparent conflict as to give effect to both.

It is obvious that the court might reach either result, depending, of course, upon which premise is adopted. Granting the insurance code the quality of a special act and that it would be effectual to deny to respondent the benefit of a stay under a general law subsequently passed, we cannot see our way clear to hold that it was the intent of the legislature to deny parties litigant the remedies and privileges thereto-

fore existing. Looking to the intent of the legislature, as it is to be gathered from the body of the act, it would seem, in so far as it may be held to affect the state of facts now before us, to be twofold: To insure prompt payment of all judgments rendered against companies which frequently operate without tangible assets; and to protect the whole people of the state from the evasive conduct of irresponsible concerns, the latter being an evil existing prior to the passage of the law of which we may well take judicial notice. The one object was to protect personal rights; the other to protect the public. It is manifest that there can be no invasion of the public right calling for a penalty so extreme as the revocation of a license to do business unless the individual, who is a judgment creditor, has been denied some right that is guaranteed by law. The code asserts that the business of insurance, in all its branches, is of a public character, and that all companies concerned "shall at all times be actuated by good faith in everything pertaining thereto; shall abstain from deceptive or misleading practices, and shall keep, observe, and practice the principles of law and equity in all matters pertaining to such business." (§ 6059-1), and further; that "The Insurance Code . . . shall supersede all prior acts on the subject of the organization and government of insurance companies and insurance business, and all such prior acts are hereby repealed." (§ 6059-238).

In no manner does the insurance code attempt to interfere with the remedies defined in the practice act, or the legal rights of either party to the contract. All remedies must be established, as before, by civil action in a court of competent jurisdiction.

We shall not discuss the several rules of construction suggested by both sides, nor will we review the authorities. We admit the rules and subscribe to the doctrine of the several cases. We find nothing in the law, when treated as a complete act, that would call for a restatement of settled rules. However, in the familiar principle that, in the construction

of statutes, courts will first of all consider the reason and spirit of the law, and in the more ancient principle that "the letter killeth but the spirit giveth life," we find ample authority to sustain our holding.

The *Attorney General* also contends that our holding will give delinquent companies an advantage over a private litigant, that the thirty days of grace given in § 6059-196 is a limitation to which may be added ninety days under § 522. It would seem that our holding that the insurance code indicates no intention on the part of the legislature to repeal by implication, *pro tanto*, any part of the practice act, and that the two statutes are to be construed *in pari materia*, is a sufficient answer to this objection. The insurance code makes no pretense of superseding or repealing existing laws other than those "on the subject of the organization and government of insurance companies and insurance business." § 6058-238.

We have so frequently held that repeals by implication are not favored that the citation of authority is unnecessary. We have but recently held that the insurance code does not repeal any general law unless it pertains to "insurance business." *Elsom v. Gadd*, 93 Wash. 603, 161 Pac. 483, 162 Pac. 867. Repeals by implication are rarely declared by courts unless the acts to be scrutinized relate to the same subject-matter. *Seattle v. Foster*, 47 Wash. 172, 91 Pac. 642. If they do not treat the same subject the courts will next inquire whether the acts may be treated *in pari materia*. If in this they fail, a repeal of an earlier act by implication will be declared. While the insurance code of 1911 provides that judgments against surety companies shall be paid within thirty days, the payment and satisfaction of judgments is not the subject-matter of the act. It is a thing germane but not essential. In this connection, it is significant that the insurance code puts no such burden upon other classes of companies which it assumes to control and regulate.

With § 522 before us, we think, therefore, that a proper construction of § 6059-196 demands that we read it as if declared in terms that such judgments should be paid unless execution be stayed by resort to the general law as declared in the practice act.

We are also impressed with the suggestion that the giving of a stay bond, thus substituting a statutory and binding obligation to pay the judgment in any event, with interest and costs, at the expiration of the period of the stay is, in legal effect, a payment *pro tempore* within the meaning of § 6059-196. In this way the doctrine of construction *pari materia* is sustained and effect is given to both statutes.

It follows that a judgment debtor company has the same legal right to stay an execution as has a private individual. The stay, in either case, may be for ninety days or it may result in a greater time, depending upon the time when the bond is given, for the object of the stay is to hold the execution in abeyance pending the time of payment as promised in the bond. Neither does it operate to give any advantage. This may seem to be so, but in truth it is not. The statute provides that a surety company shall pay a judgment within thirty days after its rendition. The general law is that execution may issue immediately after judgment, unless execution is stayed by resort to the statute or by the court in the exercise of its inherent right. 10 R. C. L., title Executions, § 44. If an individual does not pay a judgment forthwith and execution is not issued for many months thereafter, he may still stay execution for the prescribed period, although theoretically he is postponing the payment of the judgment long after he should have paid it.

It can make no difference whether a judgment debtor is bound to pay forthwith or within thirty·days, the stay operates from the time the bond is given and not from the date of the judgment. Any other rule would operate to deprive an individual of the benefit of a stay if the time appropriate

to the amount of the judgment had elapsed, for the statute fixing the time of payment within thirty days is no more binding than the general rule of law which imposes the burden of paying a judgment forthwith.

If, on the other hand, our statute provided, as statutes in some of the states provide, that execution should not issue for ten days, pending which a stay bond might be filed, we would have a perfect analogy, and it would be proper to hold that the time would run from the date of the judgment and not from the time the bond is filed (*Okey v. Sigler*, 82 Iowa 94, 47 N. W. 911), but our statute makes no limitation of time for filing, and it of necessity operates from the time the bond is filed, without discrimination between classes of judgment debtors.

On oral argument it was insisted that the duty of the insurance commissioner is mandatory; that he is without discretion; and that the law compels the ruling that he has made. This contention rests upon the assertion that § 522 is not available to companies doing business under the insurance code. It is not well taken for that reason, but it is not to be sustained for other reasons. The revocation of a license is a penalty. Penalties are usually imposed as a summary punishment for the wilful disobedience of some positive statute. They are not favored where good faith is asserted and proved.

Keeping in mind, then, the purpose of the law, in so far as it affects the public, to insure "good faith" and the observance and practice "of the principles of law and equity in all things pertaining to such business," who can say that the respondent—which has done no act of commission, and whose principal has done no more than avail itself of a privilege originally guaranteed to all litigants, and which has not been taken away unless repealed by implication—has been guilty of a breach of faith, or has failed to observe and practice "the principles of law and equity."

Any other holding would make the act inconsistent, and

would put upon the state an imputation of unfairness and a lack of that "good faith" which it has been so careful to insist upon in others.   Under the sub-title "General Provisions," it will be noticed that, except in certain emergent situations, "any insurance company" shall be notified by the commissioner not less than ten days before revocation of its authority to do business; that charges shall be specified; and that upon petition of the company, the superior court shall "summarily hear and determine the question whether such violation has been committed  .  .  ." (§ 6059-8); that the license of an agent shall not be revoked until after notice and hearing (§§ 6059-45, 6059-45a); that a company or person who knowingly violates any provision of the act shall be deemed guilty of a misdemeanor (§ 6059-102) which implies, of necessity, a hearing in a court of competent jurisdiction, there being a like provision referring particularly to life, health, and accident companies (§ 6059-191), and to title insurance (§ 6059-201), and to fraternal benefit associations (§ 6059-237), with a special provision for notice and a court review in the case of an offending fraternal benefit association (§ 6059-221).

Viewing the act of the commissioner and the rights of the respondent through all the veils and mists of the entire insurance code, we are unanimous in our holding that § 6059-196 does not impose an arbitrary duty upon the commissioner, but that he is possessed of a sound discretion to inquire and absolve, where there is no evidence of a want of good faith and the party charged is acting upon a fair conception "of the principles of law and equity" and his legal rights as they are defined in the general law.

Affirmed.

ELLIS, C. J., MORRIS, MAIN, and PARKER, JJ., concur.